UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIRGINIA WOOLFSON AND MICHAEL STINSON, *on behalf of themselves and all other employees similarly situated,*<br><br>                                              *Plaintiffs,*<br><br>          v.<br><br>CAREGROUP, INC., BETH ISRAEL DEACONESS MEDICAL CENTER, INC., BETH ISRAEL DEACONESS HOSPITAL – NEEDHAM, INC., MOUNT AUBURN HOSPITAL, NEW ENGLAND BAPTIST HOSPITAL, PAUL LEVY, LISA ZANKMAN, CAREGROUP, INC. 401K SAVINGS & INVESTMENT PLAN AND CAREGROUP VOLUNTARY 403B SAVINGS PLAN,<br><br>                                              *Defendants.* | AMENDED COMPLAINT- CLASS ACTION<br>AND DEMAND FOR JURY TRIAL<br><br>Civil Action<br><br>No. 1:09-cv-11464 |

## NATURE OF CLAIM

1.      This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, Virginia Woolfson and Michael Stinson individually, as well as all other employees similarly situated ("Class Members") under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*; under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*; and under Massachusetts statutory and common law.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of

civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; under 29 U.S.C. §216 (b); and under 18 U.S.C. § 1964(a) and (c).

3.     This Court's supplemental jurisdiction of claims arising under Massachusetts law is also invoked.

4.     Venue is appropriate in the District of Massachusetts since the allegations arose in this district and the Plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

5.     The claims arising under ERISA and RICO and Massachusetts law are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

6.     The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.     The class consists of current and former employees of defendants whose 401(k) and 403B plans were not credited with their non-reduced weekly wages and correct overtime compensation.  Additionally, the class consists of current and former employees of defendants who were injured by defendants' scheme to cheat employees out of their property and to convert the employees' property, including their wages and/or overtime pay, by misleading employees about their rights under the FLSA.

8.     The class size is believed to be over 9,000 employees.

9.     The Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class members and their claims are typical of, and concurrent to, the claims of the other Class Members.

10.     There are no known conflicts of interest between the Plaintiffs and the other Class Members.

11.     The class counsel, Dwyer & Collara, LLP and Thomas & Solomon LLP, are qualified and able to litigate the Plaintiffs' and Class Members' claims.

12.     The class counsel practice in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal wage and hour laws.

13.     Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud Plaintiffs in violation of RICO.

14.     Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are also based on defendants' policies and practice of not properly paying employees for all hours worked including applicable premium pay in violation of the laws of Massachusetts.

15.     The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the Plaintiffs seek injunctive relief, common questions of law and fact predominate among the Plaintiffs and Class Members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

**A.      Defendants**

16.     Collectively, defendants CareGroup, Inc., Beth Israel Deaconess Hospital – Needham, Inc., Beth Israel Deaconess Medical Center, Inc., Mount Auburn Hospital, New England Baptist Hospital, Paul Levy, Lisa Zankman, CareGroup, Inc. 401K Savings & Investment Plan and CareGroup Voluntary 403B Savings Plan (collectively, "Named

Defendants") are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

17.     Named Defendants health care facilities and centers include the following: Beth Israel Deaconess Hospital Needham Campus, Beth Israel Deaconess Medical Center, Mount Auburn and New England Baptist Hospital (collectively "Health Centers").

18.     Named Defendants affiliated health care facilities and centers include but are not limited to: Cardiovascular Associated Physicians of Harvard Faculty Physicians at BIDMC, HeartCenter of MetroWest, Medical Care of Boston Management Corp. d/b/a Affiliated Physicians Group, Mount Auburn Professional Services, and New England Baptist Medical Associates. (collectively, "Affiliates").

19.      Together the Named Defendants, the Health Centers and the Affiliates are referred to as "CareGroup" or "defendants".

20.     CareGroup is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

21.     Defendants operate 4 health care facilities and centers and employ approximately 9,000 individuals.

22.     Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

23.     For example, defendants have centralized computer, payroll and health records systems that are integrated throughout their locations.

24.     Further, upon information and belief, defendants' labor relations and human resources are centrally organized and controlled, including the maintenance of system-wide policies and certain employee benefit plans.

25.     Upon information and belief, defendants share common management, including oversight and management by an executive team.

26.     Upon information and belief, defendants have common ownership.

27.     As such, defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other.

28.     Paul Levy is a CEO within CareGroup.

29.     Upon information and belief, including defendants' admissions, Mr. Levy's responsibilities include actively managing employees of CareGroup.

30.     Upon information and belief, in concert with others, Mr. Levy has the authority to, and does, make decisions that concern the policies that defendants adopt and the implementation of those policies.

31.     Upon information and belief, in concert with others, Mr. Levy has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

32.     Upon information and belief, due in part to his role as a Chief Executive Officer, Mr. Levy is actively involved in the creation of the illegal policies complained of in this case.

33.     Upon information and belief, due in part to his role as a Chief Executive Officer, Mr. Levy actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

34.     Upon information and belief, due in part to his role as a Chief Executive Officer, Mr. Levy actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

35.     Upon information and belief, due in part to his role as a Chief Executive Officer,

Mr. Levy actively ensures defendants' compliance or non-compliance with Massachusetts law including the requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B.

36. Upon information and belief, in concert with others, Mr. Levy has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

37. Upon information and belief, in concert with others, Mr. Levy has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

38. Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern standard pay scales.

39. Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

40. Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

41. Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern training and education functions within CareGroup.

42. Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any

compensation they receive for attending training.

43.     Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern payroll functions within CareGroup.

44.     Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

45.     Upon information and belief, Mr. Levy has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

46.     Because Paul Levy has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Levy has the power to hire and fire employees.

47.     Because Mr. Levy has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Levy supervises and controls employees' work schedules and/or conditions of employment.

48.     Because Mr. Levy has authority to establish employees' rate and method of

payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Levy determines the rate and method of employees' payment.

49.     Because Mr. Levy has authority with respect to defendants' systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Levy maintains employees' employment records.

50.     Because Mr. Levy provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

51.     Because Mr. Levy is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, he actively participates in the violations complained of in this action.

52.     Because Mr. Levy is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with Massachusetts law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, he actively participates in the violations complained of in this action.

53.     Based upon the foregoing, Mr. Levy is liable to Plaintiffs because of his active role in operating the business, his status as an employer, and/or according to federal law and state law.

54.     Lisa Zankman is a Senior Vice President of Human Resources within CareGroup.

55.     Upon information and belief, Ms. Zankman is responsible for, provides direction and control over, and is authorized to direct aspects of human resources functions within CareGroup.

56.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Zankman is actively involved in the creation of the illegal policies complained of in this case.

57.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Zankman actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

58.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Zankman actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

59.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Zankman actively ensures defendants' compliance or non-compliance with Massachusetts state law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B.

60.     Upon information and belief, Ms. Zankman, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

61.     Upon information and belief, Ms. Zankman, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

62.     Upon information and belief, Ms. Zankman, is actively involved in decisions that set standard pay scales.

63.     Upon information and belief, Ms. Zankman, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

64.     Upon information and belief, Ms. Zankman, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

65.     Upon information and belief, Ms. Zankman, is actively involved in training and education functions within CareGroup.

66.     Upon information and belief, Ms. Zankman, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

67.     Upon information and belief, Ms. Zankman, is actively involved in payroll functions within CareGroup.

68.     Upon information and belief, Ms. Zankman is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment

is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

69.     Upon information and belief, Ms. Zankman, is actively involved in benefit plans within CareGroup.

70.     Upon information and belief, Ms. Zankman, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

71.     Because Ms. Zankman has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Zankman has the power to hire and fire employees.

72.     Because Lisa Zankman has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Zankman supervises and controls employees' work schedules and/or conditions of employment.

73.     Because Ms. Zankman has authority to establish employees' rate and method of payment and control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Zankman determines the rate and method of employees' payment.

74.     Because Ms. Zankman has authority with respect to defendants' systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Zankman maintains employees' employment records.

75.     Because Ms. Zankman provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

76.     Because Ms. Zankman is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Ms. Zankman actively participates in the violations complained of in this action.

77.     Because Ms. Zankman is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with Massachusetts law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, Ms. Zankman actively participates in the violations complained of in this action.

78.     Based upon the foregoing, Ms. Zankman is liable to Plaintiffs because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, and/or otherwise according to federal and state law.

79.     Upon information and belief, defendants maintain ERISA plans known as the CareGroup, Inc., 401K Savings & Investment Plan and CareGroup Voluntary 403B Savings Plan.

**B.     Plaintiffs**

*Named Plaintiffs*

80.     At all relevant times, Virginia Woolfson and Michael Stinson ("Plaintiffs") were employees under the FLSA, employed within this District and reside within this District.

*Class Members*

81.     The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid for all the time they worked including their regular or statutorily required rate of pay for all hours worked ("Class Members").

## FACTUAL BACKGROUND

82.     CareGroup is one of the largest health care providers in Massachusetts.

83.     As discussed below, defendants maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

*Meal Break Deduction Policy*

84.      Pursuant to defendants' "Meal Break Deduction Policy," defendant's time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though defendants fail to ensure that employees were relieved from duty for a meal break and employees did in fact perform work during those breaks and were not paid for that time.

85.     Defendants maintain the Meal Break Deduction Policy throughout its facilities and centers.

86.     Plaintiffs and Class Members allow defendants to operate on a 24/7 basis, and in doing so, Plaintiffs and Class Members often perform compensable work for defendants during their uncompensated meal breaks.

87.     Defendants do not prohibit Plaintiffs and Class Members from working during their meal breaks and do not have rules against such work.

88.     Although the defendants' policy deducts 30 minutes of pay each shift, defendants expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently requires its employees to work during their unpaid meal breaks.

89.     Plaintiffs and Class Members are not relieved by another employee when their break comes, or asked to leave their work location.

90.     Plaintiffs and Class Members are expected to eat without any change in demands from patients or relief by additional staff.

91.     Further, all defendants' employees are required to respond to pages whether on break or not, as well as requests by patients, co-workers and management.

92.     Further, defendants for years have been reducing staffing which imposes larger and larger burdens on Plaintiffs and Class Members to immediately respond to the defendants' needs regardless of whether Plaintiffs and Class Members are on a "meal break."

93.     Defendants know that Plaintiffs and Class Members perform work during their meal breaks.

94.     For example, Plaintiffs and Class Members perform the work for the defendants, on defendants' premises, in plain sight, and at management's request.

95.     Defendants' management have repeatedly observed Plaintiffs and Class Members working though their unpaid meal breaks.  Defendants' management has gone so far as to direct Plaintiffs and Class Members to work during their unpaid meal breaks even though defendants' management knew that they would not be able to have a full meal break.

96.     Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods and were not getting paid for such work.

97.     When questioned by employees about the Meal Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the worktime for which they were entitled to be paid, even though defendants knew compensable worktime was being excluded from the employees' pay.

98.     Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks even during times they were not paid for their meal breaks.

99.     Even though defendants know its employees are performing such work, defendants fail to compensate their employees for such work.

100.    All Plaintiffs and Class Members are subject to the Meal Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at CareGroups' facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, food service hosts, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters nurse case managers, nurse interns, nurse practitioners, practice supervisors,

professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, and other health care workers.

101.    Employees are entitled to compensation for all time they performed work for defendants, including during their meal breaks.

102.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during meal breaks often would include work that should have been calculated at applicable premium pay rates.

103.    All Plaintiffs and Class Members subject to the Meal Break Deduction Policy are members of Subclass 1.

***Unpaid Preliminary and Postliminary Work Policy***

104.    CareGroup suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shift and failed to ensure that employees were relieved from their duties before and/or after the end of their scheduled shift.

105.    However defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy").

106.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent, performing work before and/or after their shifts often would have

included work that should have been calculated at applicable premium pay rates.

107.     All Plaintiffs and Class Members subject to the Unpaid Preliminary and Postliminary Work Policy are members of Subclass 2.

### Unpaid Training Policy

108.     Defendants also suffered or permitted Class Members to attend compensable training programs.

109.     However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

110.     In addition, if Class Members hours had been properly calculated, the time spent attending training often would have included work that should have been calculated at applicable premium pay rates.

111.     All Class Members subject to the Unpaid Training Policy are members of Subclass 3.

112.     Collectively, the Meal Break Deduction Policy, the Unpaid Preliminary and Postliminary Work Policy, and the Unpaid Training Policy are referred to herein as the "Unpaid Work Policies."

### Additional Allegations

113.     Plaintiffs and Class Members were subject to defendants' time keeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

114.     Even though CareGroup knows its employees are performing such work, CareGroup fails to compensate its employees for such work.

115.    Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

116.    Through the paystubs and payroll information it provided to employees, CareGroup deliberately concealed from its employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly.

117.    Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all compensable time including applicable premium pay.

118.    The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' federal rights.

119.    As a result, employees were unaware of their claims.

120.    This failure to pay overtime as required by the FLSA is willful.

121.    Defendants, however, at all times intended to violate applicable federal laws by failing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked including applicable premium pay.

122.    Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent CareGroup from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

123.    Defendants sponsor pension plans including the CareGroup, Inc. 401K Savings & Investment Plan and Caregroup Voluntary 403B Savings Plan (the "Plans") for its employees.

124.    Plaintiffs and Class Members participated in the Plans as plan participants and

beneficiaries pursuant to 29 U.S.C. § 1132(a)(1).(A)(3).

125.    Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

126.    Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plans. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plans, breached their duties to act prudently and solely in the interests of Plans' participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under than Plans, or to investigate whether such hours should be credited. Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participant's participation vesting and accrual of rights.

127.    As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

128.    Plaintiffs and Class Members allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime pay (the "Scheme"). Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay

for all hours worked in violation of federal law, as described previously in this Complaint.

129.    Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs and Class Members.  The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.

130.    In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

131.    The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA.  Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

132.    Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts.  The relationship was reflected because the acts were connected to each other in furtherance of the Scheme.  Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future. The threat was reflected by the continuing and ongoing nature of the acts.

133.    Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs and Class Members for the economic

benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs and Class Members); and methods of commission (the Scheme and other acts described in the Complaint). The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

134.    At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' and Class Members' rights.

135.    Each of the Plaintiffs and Class Members is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

136.    Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

137.    Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

138.    Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs and Class Members with misleading documents which defendants mailed and upon which Plaintiffs and Class Members relied to their detriment.

139.    Plaintiffs and Class Members were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

140.    Every wage payment that the defendants mailed to the Plaintiffs and Class Members as part of the Scheme constituted a new legal injury to the Plaintiffs and Class

Members.

141.    Therefore, each and every improper payment within the relevant statute of limitation period constitutes a new legal injury and the Plaintiffs and Class Members are entitled to recover based on the reduction in each improper payment.

142.    Additionally, as set forth in the allegations above, the defendants fraudulently concealed from the Plaintiffs and Class Members the facts that are the basis for their claims. Further, such conduct by the defendants equitably tolls the statute of limitations covering Plaintiffs' and Class Members' claims.

143.    Because of such conduct, the Plaintiffs and Class Members did not discover in the relevant statute of limitations period that the defendants were not paying them properly.

144.    The Plaintiffs and Class Members exercised due diligence, but still were unaware of their rights.

145.    The Plaintiffs and Class Members are not experts in proper payment under federal labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid.

146.    Further, when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members.

147.    The defendants made this representation despite the fact that such claims were false, fully knowing that Plaintiffs and Class Members were relying on the defendants' "expertise" and assurances.

148.     Further, these assurances were not contradicted by the information in legal postings required by state or federal law to be displayed prominently at places of work to which Plaintiffs and Class Members had access.

149.     Prior to seeking legal advice from Class Counsel, the Plaintiffs were never alerted to the defendants' concealment of its violation of the law by failing to pay the Class Members properly.

150.     Further, not until the commencement of this action were Class Members made aware that the defendants' conduct in fact violated the law.

151.     Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA.

152.     Plaintiffs and Class Members were subject to defendants' time keeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

153.     Defendants' failure to pay all wages and overtime as required by Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B was in reckless disregard of Plaintiffs' and Class Members' rights.

154.     As a direct and proximate cause of defendants' failure to pay all wages and overtime as required by law, defendants violated Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, and Plaintiffs and Class Members have suffered damages.

155.     Among the relief sought, Plaintiffs seek injunctive relief to prevent CareGroup from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

156.     By entering into an employment relationship, defendants and Plaintiffs and Class

Members entered into a contract for employment, including implied contracts and express contracts.

157.   Defendants entered into an express contract with Plaintiffs and Class Members that was explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

158.   This binding express contract provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract.

159.   This express contract provided that defendants promised to compensate Plaintiffs and Class Members for "all hours worked" during their employment period.

160.   In addition, defendants' express contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to the Plaintiffs and Class Members that were in force at the time of that contract.

161.   As alleged herein, Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours.

162.   The defendants failed to pay for time that Plaintiffs and Class Members worked including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job-related training, and time that Plaintiffs and Class Members  spent before and after their regular work hours performing work-related tasks.

163.   Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and Defendants kept monies owed to the Plaintiffs and Class Members.

164.   Defendants have received that financial gain under such circumstances that in

equity and good conscience Defendants ought not to be allowed to profit at the expense of Plaintiffs and Class Members.

165.    Pursuant to their on-going dealings and course of conduct, Plaintiffs and Class Members agreed with defendants that, among other things, defendants would pay Plaintiffs and Class Members for all hours worked.

166.    Specifically, defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set work schedule for a particular position, under set terms of employment.

167.    In addition, defendants implied contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to Plaintiffs and Class Members that were in force at the time of that contract.

168.    Defendants failed to compensate Plaintiffs and Class Members in compliance with this implied contract by failing to compensate Plaintiffs and Class Members for time that they worked, including pursuant to the Unpaid Work Policies.

169.    Each such contract also included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable Massachusetts law, including payment for all time worked including applicable premium pay.

170.    Defendants failed to act in good faith and breached the express and/or implied contract terms by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members all time worked including applicable premium pay.  As a result of defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay.

171.    The contracts between Plaintiffs/Class Members and defendants contained an

implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

172.   Defendants breached their duty of good faith and fair dealing by failing to compensate Plaintiffs and Class Members in accordance with the applicable Massachusetts laws for all the time worked, including applicable premium pay.

173.   As a result of defendants' breach of duty of good faith and fair dealing, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all the time worked, including applicable premium pay.

174.   Defendants made clear, definite promises to Plaintiffs and Class Members that they would be paid for all hours worked including applicable premium pay in accordance with the applicable Massachusetts laws.

175.   Defendants made these promises with the clear understanding that Plaintiffs and Class Members were seeking employment and therefore were seeking assurances that they would be paid for all hours worked.  Plaintiffs and Class Members relied on this promise.  Without such a promise of being paid for all hours worked, Plaintiffs and Class Members would not have worked for CareGroup.

176.   Plaintiffs and Class Members acted to their substantial detriment in reasonable reliance on defendants' promise to pay them for wages and benefits earned.  Injustice can only be avoided only if this Court mandates that defendants pay its employees for all hours worked.

177.   At all relevant times, defendants had and continued to have a legal obligation to

pay Plaintiffs and Class Members all earnings and overtime due.  The wages belong to Plaintiffs and Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Plaintiffs and Class Members.

178.   In refusing to pay wages and applicable premium pay to Plaintiffs and Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Plaintiffs and Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Plaintiffs and Class Members were entitled to immediate possession of the amount of wages and overtime earned.  As a result, Plaintiffs and Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial.  This conversion was done in bad faith, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Plaintiffs and Class Members.  This conversion was concealed from Plaintiffs and Class Members.

179.   Defendants' failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members.

180.   As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages including all amounts they should have been paid at regular or premium rates for time worked.

181.   Plaintiffs and Class Members conferred a measurable benefit upon defendants by working on defendants' behalf without receiving compensation, including premium overtime compensation.

182.   As detailed herein, rather than incur additional labor costs by paying non-exempt hourly-paid employees for all of the hours that they worked, defendants accepted the services provided by Plaintiffs and Class Members and required Plaintiffs and Class Members to work hours under and in excess of forty without receiving any compensation for those hours. Plaintiffs and Class Members provided their services with the reasonable expectation of receiving compensation from the defendants.

183.   Defendants failed to compensate Plaintiffs and Class Members for all hours worked, pursuant to the Unpaid Work Policies.

184.   Defendants had an appreciation or knowledge of the benefit conferred by these Plaintiffs and Class Members.  For example, defendants' management has: observed Plaintiffs and Class Members working through their unpaid meal breaks, directed Plaintiffs and Class Members to work during their unpaid meal breaks, and affirmatively told Plaintiffs and Class Members that they could not be paid for such time.

185.   Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and defendants kept the monies and benefits owed to the Plaintiffs and Class Members.

186.   Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit and retain the benefits without payment of its value.

187.   Defendants enjoyed the benefit of the monies rightfully belonging to the Plaintiffs and Class Members at the expense of the Plaintiffs and Class Members.

188.   Defendants failed to act in good faith by failing to pay for all the hours worked including applicable premium pay, which has unjustly enriched defendants to the detriment of

Plaintiffs and Class Members.

189.    Defendants failed to act in good faith and violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members for defendants.

190.    As a direct and proximate result of defendants' unjust enrichment, Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution and disgorgement from defendants of the benefits conferred by Plaintiffs' and the Class Members' work without compensation as required by Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B and Massachusetts common law.

191.    The defendants engaged in such conduct and made statements to conceal from the Plaintiffs their rights and to frustrate the vindication of the employees' rights under Massachusetts law.

192.    As a result, employees were unaware of their claims.

193.    Through the paystubs and payroll information it provided to employees, CareGroup deliberately concealed from its employees that they did not receive compensation for all compensable time and misled them into believing they were being paid properly.

194.    Plaintiffs and Class Members are under no duty to inquire of defendants that they were paid for all hours worked including applicable premium pay. As a direct and proximate cause of defendants affirmatively misleading Plaintiffs and Class Members regarding the fact that they were to be paid for all compensable time, defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

195.    Further, in the course of their business, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were

being properly paid for compensable time, even though Plaintiffs were not receiving pay for all compensable time.

196.   Defendants, in the course of their business, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable Massachusetts laws.  Defendants failed to exercise reasonable care in communicating to Plaintiffs and Class Members that they would be paid for all compensable time.

197.   In the course of their business, defendants misrepresented in their employee manuals and policy manuals to Plaintiffs and Class Members that they would be paid for all compensable time including those worked both under and in excess of forty in a work week.

198.   Defendants intended for Plaintiffs and Class Members to rely upon defendants misrepresentations that they would be paid for all compensable time, including applicable premium pay.

199.   Defendants, however, at all times intended to violate applicable Massachusetts laws by failing to pay Plaintiffs and Class Members for all compensable time, including applicable premium pay.

200.   These misrepresentations were material to the terms of Plaintiffs' and Class Members' employment contracts (express and implied), and Plaintiffs and Class Members justifiably relied on the misrepresentations in agreeing to accept and continue employment with defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable Massachusetts law.

201.   When defendants hired Plaintiffs and Class Members, they represented to Plaintiffs

and Class Members that they would be fully compensated for all services performed.

202.   Defendants affirmatively misled Plaintiffs and Class Members regarding the fact that defendants failed to pay Plaintiffs and Class Members for all compensable time.

203.   Defendants induced Plaintiffs and Class Members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully paid for all compensable time.

204.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees for all compensable time, including applicable premium pay.  Defendants concealed the fact that they did not pay Plaintiffs and Class Members for all compensable time from Plaintiffs and Class Members.  Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to the Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B and common law.

205.   As a direct and proximate cause of defendants' fraud and negligent misrepresentations Plaintiffs and Class Members have suffered damages because they were not compensated for all compensable time that they worked both under and in excess of forty per week.

206.   Defendants also failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violations of Mass. Gen. Law Ch. 151 § 15.

207.   Defendants failed to post a workplace notice of basic minimum wage rates and other relevant positions in violation of 455 MA A.D.C. 2.06.

208.   Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under Mass. Gen. Law Ch. 151 §§ 1A, 1B.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

209.   Pursuant to the requirements as set forth in Mass. Gen. Law Ch. 149 § 150, the Office of the Attorney General has issued right-to-sue letters to proceed on these claims in court.

## FIRST CAUSE OF ACTION
### *FLSA*

210.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

211.   Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

## SECOND CAUSE OF ACTION
### *ERISA—Failure to Keep Accurate Records*

212.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

213.   Class Members bring these claims under 29 U.S.C. § 1132(a)(3), which confers on plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

214.   Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits.  Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

### THIRD CAUSE OF ACTION
### *ERISA—Breach of Fiduciary Duty*

215.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

216.     Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

### FOURTH CAUSE OF ACTION
### *RICO*

217.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

218.     Plaintiffs and Class Members bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

219.     Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs and Class Members by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.

### FIFTH CAUSE OF ACTION
### *Estoppel*

220.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

221.     Defendants are estopped from asserting statute of limitations defenses against

Plaintiffs and Class Members.

## SIXTH CAUSE OF ACTION
### *Violation of Mass. Gen. Laws Ch. 149 § 148*

222.     Plaintiffs re-allege the above paragraphs as if fully restated herein.

223.     As a direct and proximate cause of defendants' acts, including defendants' failure to act in good faith, defendants violated Mass. Gen. Laws Ch. 149 § 148, and Plaintiffs and Class Members have suffered damages.

## SEVENTH CAUSE OF ACTION
### *Failure to Pay Overtime Wages, Mass. Gen. Laws Ch. 151 §§ 1A*

224.     Plaintiffs re-allege the above paragraphs as if fully restated herein.

225.     As a direct and proximate cause of defendants' acts, including defendants failure to act in good faith, defendants violated Mass. Gen. Laws Ch. 151 § 1A, and Plaintiffs and Class Members have suffered damages.

## EIGHTH CAUSE OF ACTION
### *Breach of Contract: Failure to Pay Earned Wages*

226.     Plaintiffs reallege the above paragraphs as if fully restated herein.

227.     Defendants are liable to Plaintiffs and Class Members for breach of their contract.

228.     As a direct and proximate cause of defendants' breach of contract, Plaintiffs and Class Members have suffered damages.

## NINTH CAUSE OF ACTION
### *Breach of Contract: Failure to Provide and Pay for Missed and/or Interrupted Meal Breaks*

229.     Plaintiffs reallege the above paragraphs as if fully restated herein.

230.     Defendants are liable to Plaintiffs and Class Members for breach of their contract.

231.     As a direct and proximate cause of defendants' breach of contract, Plaintiffs and

Class Members have suffered damages.

## TENTH CAUSE OF ACTION
### *Breach of Implied Contract*

232.     Plaintiffs reallege the above paragraphs as if fully restated herein.

233.     Defendants are liable to Plaintiffs and Class Members for breach of implied contracts.

234.     As a direct and proximate cause of defendants' breach of implied contracts, Plaintiffs and Class Members have suffered damages.

## ELEVENTH CAUSE OF ACTION
### *Money Had and Received in Assumpsit*

235.     Plaintiffs reallege the above paragraphs as if fully restated herein.

236.     Defendants are liable to Plaintiffs and Class Members based on money had and received in assumpsit.

237.     As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members for all hours worked under circumstances in equity and good conscience, Plaintiffs and Class Members have suffered damages.

## TWELFTH CAUSE OF ACTION
### *Quantum Meruit/Unjust Enrichment*

238.     Plaintiffs reallege the above paragraphs as if fully restated herein.

239.     Defendants are liable to Plaintiffs and Class Members based on quantum meruit.

240.     As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members the reasonable value of their services, including defendants' failure to act in good faith, Plaintiffs and Class Members have suffered damages.

## THIRTEENTH CAUSE OF ACTION
### *Fraud*

241.   Plaintiffs reallege the above paragraphs as if fully restated herein.

242.   Defendants are liable to Plaintiffs and Class Members for fraud.

243.   As a direct and proximate cause of defendants' misrepresentations Plaintiffs and Class Members have suffered damages.

### FOURTEENTH CAUSE OF ACTION
*Negligent Misrepresentation*

244.   Plaintiffs reallege the above paragraphs as if fully restated herein.

245.   Defendants are liable to Plaintiffs and Class Members for negligent misrepresentation.

246.   As a direct and proximate cause of defendants' misrepresentations Plaintiffs and Class Members have suffered damages.

### FIFTEENTH CAUSE OF ACTION
*Equitable Estoppel*

247.   Plaintiffs reallege the above paragraphs as if fully restated herein.

248.   Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

### SIXTEENTH CAUSE OF ACTION
*Promissory Estoppel*

249.   Plaintiffs reallege the above paragraphs as if fully restated herein.

250.   Defendants are liable to Plaintiffs and Class Members for promissory estoppel.

251.   As a direct and proximate cause of defendants' promises Plaintiffs and Class Members have suffered damages.

### SEVENTEENTH CAUSE OF ACTION
*Conversion*

252.   Plaintiffs reallege the above paragraphs as if fully restated herein.

253.    Defendants are liable to Plaintiffs and Class Members for conversion.

254.    As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.

## EIGHTEENTH CAUSE OF ACTION
### *Failure To Keep Accurate Records*

255.    Plaintiffs reallege the above paragraphs as if fully restated herein.

256.    Defendants are liable to Plaintiffs and Class Members for their failure to keep accurate records.

257.    As a direct and proximate result defendants' failure to keep true and accurate record of hours worked by Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.


**WHEREFORE**, Plaintiffs and Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award of the value of Plaintiffs' and Class Members unpaid wages, including fringe benefits;

(c)    liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as  this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

Dated:  May 24, 2010

Respectfully submitted,
VIRGINIA WOOLFSON, et al.,
and all others similarly situated

By their attorneys,


*/s/ Jody L. Newman, Esq.*
Jody L. Newman (BBO No. 542264)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210-2211
(617) 371-1000
jnewman@dwyercollora.com

THOMAS & SOLOMON LLP
Patrick J. Solomon, Esq.
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
Justin M. Cordello, Esq.
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
psolomon@theemploymentattorneys.com
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jcordello@theemploymentattorneys.com